**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

26-20384-CR-ALTMAN/HERNANDEZ
**CASE NO.** ______________________

**18 U.S.C. § 1349**
**18 U.S.C. § 1343**
**18 U.S.C. § 1956(h)**
**18 U.S.C. § 981(a)(1)(C)**
**18 U.S.C. § 982(a)(1)**
**18 U.S.C. § 982(a)(2)(A)**

FILED BY RCH1 D.C.
Sep 10, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

**UNITED STATES OF AMERICA**

**vs.**

**LYTII BORDERS, JR.,**

**Defendant.**
______________________________/

# INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At various times relevant to this Indictment:

### The Small Business Administration

1. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. Those loans had government-backed guarantees.

**The Paycheck Protection Program**

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering from the economic effects caused by the COVID-19 pandemic. One source of relief that the CARES Act provided was the Paycheck Protection Program ("PPP"), which authorized forgivable loans to small businesses for job retention and certain other expenses.

4. The SBA promulgated regulations concerning eligibility for a PPP loan. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation on February 15, 2020, and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. Payments to independent contractors are typically reported to the Internal Revenue Service ("IRS") on a "Form 1099-MISC." In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

5. In addition, a business applying for a PPP loan was required to provide documentation showing its payroll expenses. This payroll information was material to the application because, pursuant to statutory requirements and implementing regulations, the amount of the loan that typically could be approved was a function of the applicant's historical payroll

costs, consisting of compensation to its employees whose principal place of residence was the United States, subject to certain exclusions.

6. Individuals who operated a business under a "sole proprietorship" business structure were eligible for a PPP loan. To qualify for such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship. Sole proprietorships typically report their income and expenses yearly to the IRS on a "Form 1040, Schedule C." As with other PPP loans, this information and supporting documentation was used to calculate the amount of money the individual was entitled to receive under the PPP. The maximum PPP loan amount for a sole proprietor with no employees was $20,833.

7. PPP loan applications were processed by participating lenders and third-party loan processors. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, including by electronic transfer through the Automated Clearing House system. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8. After the lender funded the PPP loan to the borrower, the lender submitted disbursement details into the SBA E-Tran system, with servers located in Sterling, VA. The SBA's Denver Finance Center, located in Denver, Colorado, created payment files and authorized payments of the PPP processing fee to the lender through the Financial Management System to the Treasury. The primary server for the Financial Management System was in Sterling, VA. The PPP processing fee varied depending on the amount of the loan. Once created, the payment files were then transmitted via wire to the U.S. Treasury disbursing office in Kansas City, Missouri,

which, in turn, sent instructions for payment of funds to the Federal Reserve Bank Automated Clearing House processing site in East Rutherford, New Jersey.

9. The proceeds of a PPP loan could be used only for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments for the business. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, or jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

10. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the borrower utilized 60% of the loan in the 24 weeks post-disbursement toward payroll costs and utilized the remaining 40% on qualified expense items (e.g., mortgage, rent, and utilities).

11. Applying for PPP loan forgiveness was a separate process that required additional affirmations that the applicant satisfied the eligibility for PPP loan forgiveness. Whatever portion of the PPP loan was not forgiven was serviced as a loan.

**The Economic Injury Disaster Loan Program**

12. Another source of relief provided by the CARES Act were Economic Injury Disaster Loans ("EIDL") to business owners negatively affected by the COVID-19 pandemic. Applicants applied for EIDL directly through the SBA, which reviewed the information and dispersed the funds to the applicants without an intermediary financial institution.

13. Using the SBA online portal, a business was required to submit an EIDL application to the SBA and provide information in support of each EIDL application about its operations, such as the number of employees, gross revenues, and the cost of goods sold for the 12-month period preceding January 31, 2020. Applicants were not required to provide supporting documentation

with EIDL applications but were required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge. All applications submitted on July 11, 2020 or after were handled by an SBA contractor with servers located in Des Moines, Iowa. Prior to July 11, 2020, EIDL applications were submitted through three different servers, which were located in: Boydton, Virginia; West Des Moines, Iowa; or Quincy, Washington.

14. EIDL applications were submitted directly to the SBA and processed by the SBA with support from a government contractor. The amount of the loan was determined based, in part, on the information provided in the application concerning the number of employees, gross revenues, and cost of goods sold. Any EIDL funds were issued directly by the SBA.

15. Once an SBA EIDL application was approved, the SBA's Denver Finance Center, located in Denver, Colorado, created payment files and authorized payments of the EIDL funds based on those applications. The disbursement of the EIDL funds were transmitted by the Financial Management System ("FMS") to the Treasury and then to the recipient's bank account. The primary server for the FMS is in Sterling, Virginia. Upon approval of an application for an EIDL or cash advance grant, the SBA would disburse the funds.

**Relevant Financial Institutions and Lenders**

16. Bank 1 was a financial institution with offices located throughout the United States, including in the State of Florida, whose accounts were insured by the Federal Deposit Insurance Corporation.

17. Lender 1 was a third-party participating lender in the PPP, and was located in Coral Gables, Florida.

**The Defendant and Related Entities**

18. Defendant **LYTII BORDERS, JR.**, was an individual who resided in Miami-Dade County, Florida.

19. LSB Professionals, LLC ("LSB") was a Florida limited liability company with its principal place of business listed as 425 N.W. 210th Street, Apt. 201, Miami, Florida 33169. Its registered agent and manager was **LYTII BORDERS, JR.** LSB had a bank account at Bank 1 that **BORDERS** controlled.

**COUNT 1**
**Conspiracy to Commit Wire Fraud**
**(18 U.S.C. § 1349)**

1. The General Allegations Section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around February 2020, and continuing through in or around August 2021, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**LYTII BORDERS, JR.,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communications, in interstate and foreign commerce,

certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

**PURPOSE OF THE CONSPIRACY**

3. It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of a false and fraudulent application for an EIDL loan made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic; and (b) diverting fraud proceeds for the defendant and his co-conspirators' personal use and benefit, the use and benefit of others, and to further the conspiracy.

**MANNER AND MEANS OF THE CONSPIRACY**

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. **LYTII BORDERS, JR.** and other co-conspirators submitted, and caused the submission, of a false and fraudulent EIDL application to the SBA on behalf of LSB. The loan application and related documents contained false statements and representations relating to the total number of employees, payroll expenses, and revenue of LSB.

5. As a result of the false and fraudulent EIDL application, on or about June 23, 2020, the SBA disbursed approximately $159,900 in loan funds into Bank 1, a bank account controlled by **LYTII BORDERS, JR.**

6. After receiving the loan funds on or about June 23, 2020, **LYTII BORDERS, JR.** spent over $35,000 on a Mercedes-Benz vehicle, luxury and department store purchases, airfare, rent, and other personal expenses.

7. From on or about November 17, 2020, through on or about December 22, 2020, **LYTII BORDERS, JR.** sent approximately $59,500 of the loan funds to a co-conspirator.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2–3**
**Wire Fraud**
**(18 U.S.C. § 1343)**

1. The General Allegations Section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around February 2020, and continuing through in or around August 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**LYTII BORDERS, JR.,**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

**PURPOSE OF THE SCHEME AND ARTIFICE**

3. It was the purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of a false and fraudulent application for an EIDL loan made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic; and (b) diverting fraud

proceeds for their personal use and benefit, the use and benefit of others, and to further the scheme and artifice.

## THE SCHEME AND ARTIFACE

4. The allegations contained in paragraphs 4 through 7 of the Manner and Means Section of Count 1 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## USE OF WIRES

5. On or about the dates specified below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, **LYTII BORDERS, JR.**, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, as described below:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRE |
|---|---|---|
| 2 | June 23, 2020 | A wire transfer in the approximate amount of $149,900 sent from outside the State of Florida to LSB's Bank 1 account in the Southern District of Florida. |
| 3 | June 23, 2020 | A wire transfer in the approximate amount of $10,000 sent from outside the State of Florida to LSB's Bank 1 account in the Southern District of Florida. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 4
**Wire Fraud**
**(18 U.S.C. § 1343)**

1. The General Allegations Section of this Indictment is re-alleged and incorporated

by reference as though fully set forth herein.

2. From in or around April 2021, and continuing through in or around June 2022, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**LYTII BORDERS, JR.,**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3. It was the purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of a false and fraudulent application for a PPP loan made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic; and (b) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the scheme and artifice.

## THE SCHEME AND ARTIFICE

The manner and means by which the defendant and his accomplices sought to accomplish the object and purpose of the scheme and artifice included, among others, the following:

4. **LYTII BORDERS, JR.** submitted, and caused the submission, of a false and fraudulent PPP loan application to Lender 1, containing a false and fraudulent 2019 Schedule C, as an authorized representative of the sole proprietorship, "Lytii Borders."

5. As a result of the false and fraudulent PPP loan application, on or about June 8, 2021, the SBA and Lender 1 disbursed loan funds into Bank 1, a bank account controlled by **LYTII BORDERS, JR.**

6. After receiving the PPP loan funds on or about June 8, 2021, **LYTII BORDERS, JR.** spent over $15,000 on rideshare expenses, food, clothing, Airbnb, Walmart, and other personal expenses.

7. On or about April 14, 2022, **LYTII BORDERS, JR.** submitted a PPP loan forgiveness application that falsely and fraudulently represented that $12,499.80 was spent on payroll costs.

**USE OF WIRES**

8. On or about June 8, 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, **LYTII BORDERS, JR.**, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, that is, an electronic transmission from the Southern District of Florida to outside the State of Florida of information notifying the SBA of the disbursement of a loan to **BORDERS** by Lender 1, in violation of Title 18, United States Code, Section 1343.

**COUNT 5**
**Conspiracy to Commit Money Laundering**
**(18 U.S.C. § 1956(h))**

1. The General Allegations Section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around February 2020, through in or around August 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**LYTII BORDERS, JR.,**

did knowingly and voluntarily combine, conspire, confederate and agree with other persons known and unknown to the Grand, to knowingly engage in monetary transactions affecting interstate and foreign commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, and knowing that the property involved in the monetary transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957(a).

It is further alleged that the specified unlawful activity was wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1956(h).

**FORFEITURE ALLEGATIONS**

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **LYTII BORDERS, JR.**, has an interest.

2. Upon conviction of a violation of, and/or a conspiracy to violate, Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United

States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. Upon conviction of a violation of, and/or a conspiracy to violate, Title 18, United States Code, Section 1343, more specifically wire fraud affecting a financial institution, as alleged in this Indictment, the defendant shall forfeit to the United States any property, constituting, or derived from, proceeds the person obtained directly or indirectly as result of such offense, pursuant to Title 18, United States Code, Section 982(a)(2)(A).

4. Upon conviction of a violation of, and/or a conspiracy to violate, Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

5. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and 982(a)(2)(A), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

FOR

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

NICHOLAS Y. CARRÉ
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA** **CASE NO.** 26-20384-CR-ALTMAN/HERNANDEZ

**v.**

LYTII BORDERS, JR.,

______________________________/
Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) ______
Number of New Defendants ______
Total Number of New Counts ______

**Court Division** (select one)
☒ Miami ☐ Key West ☐ FTP
☐ FTL ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: ______
4. This case will take 3 days for the parties to try.
5. Please check appropriate category and type of offense listed below:

| (Check only one) | | (Check only one) |
|---|---|---|
| I | ☒ 0 to 5 days | ☐ Petty |
| II | ☐ 6 to 10 days | ☐ Minor |
| III | ☐ 11 to 20 days | ☐ Misdemeanor |
| IV | ☐ 21 to 60 days | ☒ Felony |
| V | ☐ 61 days and over | |

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge ______ Case No. ______
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge ______ Magistrate Case No. ______
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge ______ Case No. ______
9. Defendant(s) in federal custody as of ______
10. Defendant(s) in state custody as of ______
11. Rule 20 from the ______ District of ______
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No
17. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

By: ______________________
NICHOLAS Y. CARRÉ
Assistant United States Attorney
FL Bar No. 1022177

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: LYTII BORDERS, JR.

**Case No**: 26-20384-CR-ALTMAN/HERNANDEZ

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000

Counts #: 2–4

Wire Fraud

Title 18, United States Code, Section 1343
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000

Count #: 5

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000

***Refers only to possible term of incarceration, supervised release, and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**